SYLVESTER J. LYNCH, PLAINTIFF-APPELLANT, v. BOR-
OUGH OF EDGEWATER, DEFENDANT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued June 4, 1951—Decided June 25, 1951.

Before Judges EASTWOOD, BIGELOW and FREUND.

*Mr. Abram A. Lebson* argued the cause for the plaintiff-appellant (*Mr. Stanley W. Bradley,* of counsel).

*Mr. Milton T. Lasher* argued the cause for the defendant-respondent.

The opinion of the court was delivered by

EASTWOOD, J. A. D. The question for determination is whether the plaintiff is entitled to payment of salary as a

borough policeman for a period of 90 days while he was on leave of absence to attend an Army Reserve Officers' training course.

The facts are not in dispute. The plaintiff, an employee of the borough police department was, on September 16, 1948, and for many years prior thereto, a member of the Organized Reserve of the Army of the United States, holding the rank of major. In July, 1948, the plaintiff voluntarily applied for active training with the United States Army. The application was accepted and plaintiff was ordered to attend the "Associate Basic Course" at the Transportation School, Fort Eustis, Virginia, for a period of 90 days, effective September 17, 1948. On September 16, 1948, plaintiff applied to the mayor and council of the borough for leave of absence from his duties, which was granted by the borough, without pay. Upon completion of his 90-day training period, plaintiff returned to his regular duties as a patrolman. The borough having refused to accede to the plaintiff's demand for payment of his salary for the period covered by his absence, he instituted an action for the recovery thereof in the amount of $875.01, basing his claim upon the provisions of *R. S.* 38:23–1. The Bergen County District Court held that the plaintiff, having voluntarily applied for active duty training, was not engaged in field training as contemplated by *R. S.* 38:23–1 and, therefore, was not entitled to recover his salary for the period in question. Plaintiff appeals from the trial court's judgment.

The defendant contends that the term "field training" as used in *R. S.* 38:23–1 meant the 15-day maximum period for which a reserve officer could be compelled to serve in any one year during peace time and not a greater period for which any officer might volunteer. It is argued that the term "field training" connotes the annual 15-day training period which troops undergo as a unit such as National Guard training and the like. The defendant also argues that if *R. S.* 38:23–1 be interpreted to authorize the grant of plaintiff's salary for a period for which he did not serve

the municipality, it would amount to an unconstitutional grant, and that by accepting leave without pay and not contesting it for nearly a year, he has waived any rights he may have had to the salary claimed.

The pertinent statute, *R. S.* 38:23–1, about which this controversy revolves, provides:

"An officer or employee of the state or a county or municipality, who is a member of the organized reserve of the army of the United States, United States naval reserve force and United States marines corps reserve, or other organization affiliated therewith, shall be entitled to leave of absence from his respective duty without loss of pay or time on all days on which he shall be engaged in field training. Such leave of absence shall be in addition to the regular vacation allowed such employee."

The crux of the problem is the interpretation of the words "field training." The evidence is uncontroverted that Major Lynch was a specialist in amphibious landing control and the purpose of his temporary active duty training was the attendance of an "Associate Basic Course" in refreshing and refining his military skills and the earning of points toward a promotion in the Army. The special regulations under which plaintiff was recalled to active duty provide: "Officers on active duty training will be assigned only for such duties as contribute materially and demonstrably to the individual's military development." It was held in *Ex Parte Jochen,* 257 *Fed.* 200, 205 (*D. C. Tex.* 1919), that the term "in the field" in the Articles of War, will be construed as used with the meaning which long usage of the War Department had given them, and as contained in its *General Orders, Compilation* 1881 *to* 1915, *sec.* 319, also *Manual Quartermaster's Corps, United States Army, sec.* 2193, defining "field service" to be service in mobilization, concentration, instruction, or maneuver camps, as well as service in campaign, simulated campaign, or on the march. It, therefore, undeniably appears that the purpose of plaintiff's temporary active duty was to engage in "field training" from the strict lexicographic view of the statute. As stated in *MacPhail v.*

*Board of Chosen Freeholders of Hudson County*, 6 *N. J. Super.* 613, 620 (*Law Div.* 1950):

"The canon of construction applicable here is that recently pronounced by the Supreme Court in *Hackensack Water Co. v. Ruta*, 3 *N. J.* 139, at 147 (1949), where it is said: 'We gather the sense of a law from its object and the nature of the subject matter and the whole of the context and the acts *in pari materia*. The parts of a statute are to be viewed in relation to the whole, and the motive which lead to the making of the law, and reconciled, if possible, to carry out the reasonably probable legislative policy. The general intention of the act controls the interpretation of its parts.' "

"Our judicial function is confined to the interpretation and application of the comprehensive legislative phraseology in the light of its history, purpose and context." *Ablondi v. Board of Review*, 8 *N. J. Super.* 71, 75 (*App. Div.*, 1950). If a remedy is desirable for a situation such as that presently under review, the necessary action is legislative, not judicial. *Adams v. Atlantic County*, 137 *N. J. L.* 648 (*E. & A.* 1948).

We are of the opinion that this court's recent interpretation of the legislative intendment of *R. S.* 38:23–1 in the case of *Parks v. The Union County Park Commission*, 7 *N. J. Super.* 5 (*App. Div.* 1950), is applicable to the case *sub judice*. At *p.* 10 of 7 *N. J. Super.*, of the *Parks* decision, we stated:

"We believe that the comparison of the aforementioned statutes indicates that the legislative intendment of *R. S.* 38:23–1 was to engender on the part of trained military personnel an incentive to retain their interest and skills in military affairs at a high degree of efficiency through the reserve organization training program, with a minimum of sacrifice to them and to provide additional compensation for their service. Under the provisions of this statute, members of reserve organizations of the United States armed forces are entitled to a leave of absence from their duties as employees of the State, county or municipality 'without loss of pay or time' while engaged in field training."

We are not impressed with defendant's contention that plaintiff's voluntary recall would remove him from the purview of the statute, for it is not the incidental benefit at-

tained by the individual that the Legislature sought to preserve, but the incentive for the perfection of special skills and the preservation of our military might by insuring the individual reservist against loss of benefits, opportunity or compensation while so engaged.

Nor does the length of the plaintiff's training period necessarily remove him from the protection of the statute. Otherwise, the protection sought to be afforded to the reservist would be unavailable to those who, by reason of the complexity of their responsibilities or by reason of the intricacies of their technical training, are required to spend a greater time in the perfection of their skills. The words of the statute are very broad, providing that the reservist shall be entitled to the benefits "on all days on which he shall be engaged in field training."

We are of the opinion that *R. S.* 38:23–1 is not an unconstitutional grant of public funds. The Legislature is not inhibited from providing an incentive remuneration for services performed voluntarily by an individual in the interest of maintaining and preserving an efficient and skilled military force for the protection of our country and our way of life, as long as the law operates equally upon all members of a group which, having regard to the purposes of the legislation, are distinguished by characteristics sufficiently marked and important to make them a class by themselves. The statute in question, *R. S.* 38:23–1, applies to any "* * * officer or employee of the state or a county or municipality, who is a member of the organized reserve of the army of the United States, United States naval reserve force and United States marine corps reserve, or other organization affiliated therewith, * * *," which we regard as a reasonable classification when considered from the viewpoint of the legislative purpose or object. The object of the statute, the retention of interest and skill in military affairs at a high degree of efficiency, by trained military personnel for the preservation of our military strength, to keep safe and secure the lives and property of the citizenry is an important and beneficial public object

and the compensation provided for participants is the performance of a highly moral duty of the government in recognition of their services. The payment of a recognized moral obligation assumed for services rendered has been held repeatedly to be within the legislative power and its discharge does not constitute a donation of public funds. *Rader v. Township of Union,* 39 *N. J. L.* 509 (*Sup. Ct.* 1877); *Rutgers College v. Morgan, Compt'r.,* 70 *N. J. L.* 460 (*Sup. Ct.* 1904); *Morris and Essex R. R. Co. v. Newark,* 76 *N. J. L.* 555 (*E. & A.* 1908).

The statute in question provides that persons qualifying thereunder "shall be entitled to leave of absence from his respective duty without loss of pay or time * * *." We construe the provision to afford the governmental employer no discretion in the matter and mandating the payment of employees otherwise qualifying thereunder. And, we do not find any act or conduct of the plaintiff that could be construed as a waiver of his claim.

Under the circumstances of this case we are convinced that the plaintiff was entitled to the protection afforded by *R. S.* 38:23-1 and that he should recover his unpaid salary.

The judgment of the Bergen County District Court is reversed.